RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: (510) 763-9967
Facsimile:   (510) 380-6551
rsp@rspollocklaw.com

Attorney for Defendant
MARK GOLDBERG

UNITED STATED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

−ooo−

| | |
|---|---|
| UNITED STATES OF AMERICA | **No. 14-00016-MMC** |
| Plaintiff, | |
| vs. | **DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION TO DISMISS** |
| MARK GOLDBERG, et al., | Hearing Date:   October 11, 2017 |
| Defendants. | Hearing Time:   2:15 p.m. |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   ALL THE PATIENTS PROVIDED MEDICINAL MARIJUANA
     BY COMPASS RECEIVED THE AMOUNTS PRESCRIBED BY LAW . . . . . . . . . . . 2

     A.   The Law Governing The Amounts A Collective Can Distribute . . . . . . . . . . . . . 2

     B.   Compass Was Not Required To Disclose The Medical Needs Of Its Patients Or
          Details Regarding Their Membership. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.   Compass Was Not Required To Track The Amount Of Marijuana They Provided
          To Their Patients Or The Amounts They Cultivated . . . . . . . . . . . . . . . . . . . . . . 4

     D.   Compass Is Entitled To Use The Quantities in H&S §11362.77 . . . . . . . . . . . . . 5

II.  COMPASS HAS PROVIDED EXHAUSTIVE
     EVIDENCE THAT IT OPERATED AS A NON-PROFIT . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Compass Was Not Required To Include Their Members In Its Operational
          Decisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.   Cooperating Co-Defendant Hunter's Comments Should Be Disregarded . . . . . . 7

III. COMPASS WAS A CLOSED-CIRCUIT OPERATION. . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  THE *PISARSKI* AND *GENTILE* DECISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.   DEFENDANT'S COMPLIANCE MUST BE WEIGHED BY
     WHETHER HE SPECIFICALLY INTENDED TO VIOLATE THE LAW . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

*Page*

FEDERAL CASES

*United States vs. Gentile*
  12-00360-DAD-BAM, 2017 WL 1437532 (EDCA, April 24, 2017) . . . . . . . . . . . . . 1, 11

*United States vs. Kleinman*
  858 F.3d 825 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States vs. McIntosh*
  833 F.3d 1163 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

*United States vs. Pisarski*
  CR. 14-00278-RS, Dkt. 197, (NDCA, August 8, 2017) . . . . . . . . . . . . . . . . . . . . 1, 8-10

FEDERAL STATUTES

21 U.S.C.
   Section 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   Section 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Health Information Portability and Accountability Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATE CASES

*People vs. Colvin*
  (2012) 203 Cal.App.4th 1029 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People vs. Jackson*
  (2012) 210 Cal.App.4th 525 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*People vs. Kelly*
  (2010) 47 Cal.4th 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*People vs. Orlosky*
  (2015) 233 Cal.App.4th 257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*People vs. Trippet*
  (1997) 56 Cal.App.4th 1532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*People vs. Urziceani*
  (2005) 132 Cal. App.4th 747 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People vs. Vineberg*
  (1981) 125 Cal.App.3d 127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People vs. Windus*
  (2008) 165 Cal.App.4th 634 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES
*Continued*

*Page*

STATE STATUTES

Compassionate Use Act of 1996 .................................................. 2

Confidentiality of Medical Information Act .......................................... 3

Corporations Code
    Section 7110 .................................................................. 6

Health & Safety Code
    Section 11362.5(d) ............................................................ 2

    Section 11362.7 .............................................................. 7

    Section 11362.713 ............................................................ 3

    Section 11362.77 ........................................................... 2, 5

    Section 11362.775 ....................................................... 6, 7, 10

Medical Marijuana Program ....................................................... 2, 3, 6, 8, 9

Proposition 215 ................................................................ 2

Proposition 64 ................................................................. 3


OTHER AUTHORITIES

California Attorney General Guidelines of 2008 ............................... 1, 8, 9, 12-14

San Francisco Medical Cannabis Act §3302 ........................................... 5

**PRELIMINARY STATEMENT**

Since the initial filing in this case, two California district court opinions have addressed the "strict compliance" issue raised in *United States vs. McIntosh,* 833 F.3d 1163 (9th Cir. 2016); specifically, *United States vs. Pisarski*, CR. 14-00278-RS, Dkt. 197, (NDCA, August 8, 2017) [**Exhibit W**[1]] and *United States vs. Gentile*, 12-00360-DAD-BAM, 2017 WL 1437532 (EDCA, April 24, 2017) [**Exhibit X**]. Judge Seeborg in *Pisarski* found strict compliance with the collectives in that case and issued an injunction. Judge Drozd in EDCA, Fresno, denied an injunction as to a store-front dispensary. Both of these cases will be addressed in this reply.[2]

Additionally, defendant urges this Court in considering the submitted pleadings and argument to be mindful of the tenuous position that the Attorney General Guidelines currently pose in discussing the rules governing medical marijuana in California.

On December 21, 2011, almost a year before the raids in this case, then Attorney General Kamala Harris questioned the continuing validity of the AG Guidelines drafted in 2008. She wrote the legislature about the "unsettled questions of law and policy in the areas of cultivation and distribution of physician-recommended marijuana" that the non-binding guidelines did not address. Specifically, she referenced the need for the legislature to clarify the definition of the contours of the right to collective and cooperative cultivation as well as the term "profit" and what costs are reasonable for a collective to incur. While she was urging the legislature to establish clear rules governing access to medical marijuana it was with the admonition that "California law places a premium on patients' rights to access marijuana for medical use." **Exhibit Z.**

---

[1] Counsel files herewith an Index of **Exhibits W through CC** in Support of Defendant Goldberg's Reply to Government Opposition to Motion to Dismiss and will be amended after filing with references to ECF headers and page ranges. Counsel contemporaneously files an *Amended Index of Exhibits A through V*. The previous Index (filed May 26, 2017 as ECF Documents 219-3 through 219-7) identifies each exhibit by letter only. The Amended Index refers to exhibits by ECF headers and page ranges.

[2] The transcript of the hearing in *Pisarski* is attached to the Declaration of Randy Sue Pollock in Support of Reply as **Exhibit Y.**

# I.
# ALL THE PATIENTS PROVIDED MEDICINAL MARIJUANA BY COMPASS RECEIVED THE AMOUNTS PRESCRIBED BY LAW

**A.   The Law Governing The Amounts A Collective Can Distribute**

The Compassionate Use Act of 1996 (CUA), enacted in 1996 by the passage of Proposition 215, was designed to "ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes...". Health & Safety Code (H&S) §11362.5(d). The CUA does not specify an *amount* of marijuana that a patient may possess or cultivate, but simply imposes the requirement that the marijuana must be for the patient's *personal medical purposes*." See *People vs. Kelly* (2010) 47 Cal.4th 1008 and *People vs. Orlosky* (2015) 233 Cal.App.4th 257.

The government's reliance on *People vs. Trippet* (1997) 56 Cal.App.4th 1532, a 20 year old case regarding the quantities of marijuana a patient can possess is dubious given the extensive body of case law that has followed. The government has completely ignored the Medical Marijuana Program (MMP), enacted in 2004 by SB 420, which set a **minimum** legal limit of eight ounces for legal possession for medicinal patients. The point of the MMP is that the quantity a patient can possess is **patient specific**. In *People vs. Windus* (2008) 165 Cal.App.4th 634, the California Court of Appeal stated that nothing in the CUA, the MMP or case law supports the view that a doctor's recommendation has to specify the amount of marijuana required for a patient's medical needs. Also, notably the court said there is nothing that says a recommendation ever expires.

The *Orlosky* decision, *supra* at 268, explains that one of the purposes of the MMP is to "enhance the access of patients and care givers to medical marijuana through collective, cooperative cultivation projects." Because amounts of marijuana can be aggregated for purposes of a collective, Compass was able to legally cultivate and possess eight ounces on behalf of each patient member. H&S §11362.77 merely set guidelines. The patients provided medicinal marijuana from Compass were required to show a valid doctor's recommendation or a valid Marijuana ID program card. The default quantity of medicine they were then entitled to possess was eight ounces.

B.  **Compass Was Not Required To Disclose The Medical Needs Of Its Patients Or Details Regarding Their Membership**

The government has incorrectly argued that defendants need to advise the Court of (1) the medical needs of their patients and (2) how much marijuana was provided to those patients. There is no law that requires a collective to record the medical needs of their patients. Also, it is the role of a doctor, not the collective, to state what quantity is "medically necessary" for a patient.

First, the medical needs of patients are private. A doctor's recommendation for medical marijuana is private since HIPAA makes it nearly impossible for even law enforcement to obtain private patient records. Under the MMP, a patient is issued a Medical Marijuana Identification Card (MMIC) which has a photo identification and a unique user identification number for the cardholder. Proposition 64 added H&S §11362.713 which ensures privacy for all patients by stating that all marijuana patient information is deemed "medical information" under California's "Confidentiality of Medical Information Act," which is similar to the federal HIPAA.

Neither the medical needs nor the amounts provided, other than the minimum limit of eight ounces, was ever required by the law governing collectives. Under *People vs. Kelly*, *supra*, the California Supreme Court clarified that one may exceed the standard limitation of eight ounces if in possession of a doctor's order that stated that the medical needs necessitated more than eight ounces.

Regarding membership in the Compass Collective, the government mistakenly argues that Compass provided only to residents of Peter Claver House. It was clearly stated in defendant's declaration **[Docket 219-1, ¶2]** that Compass supported the needs of the Peter Claver community **and** other less fortunate individuals who were both seriously ill and unable to attain or afford medicinal cannabis.

Additionally, the government disputes the number of 45-55 members of Compass in 2012 by looking at an internet printout about Peter Claver dated May 10, 2017 which stated the residents had 32 members [**Docket 219-5 at 2**]. The printout was included to explain Peter Claver House and is not intended to reflect the size of its membership in 2012.

As explained in defendant's exhibits, **Docket 219-5 at 30**, they did keep membership records on site at each location (Folsom, Third Street and Armstrong) as well as with their attorney. Many of the records were seized or destroyed in the course of the raids. Attached to this reply, as an *under seal* exhibit, are copies of all the membership records for Compass members that Mr. Goldberg personally maintained, as well as 112 HCC qualified patients for whom he provided medicine.  **See Exhibit AA.**[3]

**C.    Compass Was Not Required To Track The Amount Of Marijuana They Provided To Their Patients Or The Amounts They Cultivated**

The government has misquoted the AG Guidelines regarding whether a collective must account for the marijuana they grow. Govt. Opp'n. Pg.6:5-10.  The AG Guidelines, Dkt. 220-1, IV.B.4 at 10, not IV.B.7 at 11, state as follows:

> "...To help prevent diversion of medical marijuana to non-medical markets, collectives and cooperatives should document each member's contribution of labor, resources, or money to the enterprise.  They should also track and record the source of their marijuana."

The purpose of this statement in the non-binding AG guidelines is to reinforce the rule that collectives should only acquire, possess and distribute lawfully cultivated marijuana. The government cannot point to Compass diverting their marijuana to any non-medical markets. There is no record of any sales of marijuana by Compass and they cannot be presumed. Compass was not a store-front dispensary and was not in the business of selling its marijuana.  Any excess that Compass cultivated was provided to HCC per the parties' agreement.  There is nothing in the MMP or case law that requires any tracking or record keeping.  This argument by the government is a red-herring that is irrelevant to the issue before this Court to determine whether Compass was in strict compliance with California medicinal marijuana law.

---

[3] Counsel is not filing the doctor's recommendation since that is a violation of HIPAA.

**D.    Compass Is Entitled To Use The Quantities in H&S §11362.77**

The government erroneously argues that Compass could not use the quantities set forth in Section 11362.77 [a minimum limit of eight ounces]. At the time of the raid, the three grows Compass had were in San Francisco and therefore subject to §3302 of the San Francisco Medical Cannabis Act [Dkt. 219:10] which provided as follows:

> "... **In addition** [to the eight ounces of dried cannabis per qualified patient] a qualified patient, person with a valid identification card, or primary care giver may also maintain no more than twenty-four (24 cannabis plants par qualified patient.).." Dkt.219:10 at 6-7.

Mr. Goldberg has provided records of the Compass membership that justifies the amount of marijuana found at the three Compass sites on September 19, 2012.[4]

## II.
## COMPASS HAS PROVIDED EXHAUSTIVE EVIDENCE THAT IT OPERATED AS A NON-PROFIT

Defendant Goldberg's opening brief [Dkt. 219] extensively identified all of the expenses Compass incurred in growing medicinal marijuana. The declaration of Mr. Goldberg also clearly stated that the marijuana provided to Compass members was a donation—none of the members paid for this marijuana. The amounts provided to HCC members was pursuant to an agreement Compass entered into with HCC. Under the AG Guidelines as well as case law, Compass was entitled to reimbursement for necessary expenses; namely, all of the expenses laid out in Mr. Goldberg's declaration [Dkt. 219:5-7].

The government repeatedly asks the same questions--- "how much marijuana was supplied and at what prices?"—but the answers remain the same. The quantity was no more than eight ounces per qualified patient and Compass was not paid for the quantities provided. The medical marijuana was not sold and there is no evidence of sales transactions. It is evident from Mr. Goldberg's declaration that the reimbursement for expenses did not cover the extraordinarily

---

[4] On September 19, 2012, Compass had 71 qualified patients and 112 qualified members of HCCII. **Exh. AA**.

high cost of Compass' expenses[5]. The government cannot point to anything that shows that Compass was a for-profit collective. In order for a business to be considered "for profit" there must be a distribution to its shareholders. Compass had no shareholders and there were never any distributions. Mr. Goldberg and Mr. Dang were paid as employees, by a set salary until cost-cutting measures necessitated that their salaries be frozen. Dkt.219-1 at 7:3-6.

**A.     Compass Was Not Required To Include Their Members In Its Operational Decisions**

The government has confused the definition of a "cooperative" and a "collective" in its discussion about the structure of Compass in its reference to *People vs. Jackson* (2012) 210 Cal.App.4th 525, Govt Opp'n. Dkt. 228 at 14. A cooperative has statutory rules and requires one vote per member. A collective, on the other hand, has no such statutory requirement and is technically not a recognized entity under the Cal. Corporations Code. The term "collective" comes from the MMP provision under H&S §11362.775 which permits patients and care givers to "collectively or cooperatively" cultivate medical marijuana. See *Orlosky, supra*.

Compass was a California registered Nonprofit **Mutual Benefit Organization** (MBO), as defined under Cal. Corporations Code §7110, et seq. **See Exhibit 219-6**, **pg.21**, *Preamble to the Bylaws of Compass*. This type of corporation is governed by its Board of Directors. The Board has the ultimate responsibility for the actions of the organization. A nonprofit MBO is not legally required to allow general members to vote on decisions of the corporation. An MBO operates only for the benefit of its members and not to make a profit. Many mutual benefit corporations choose to have a non-voting membership that has access to other benefits but no governance authority. Compass operated in this manner. As explained in its *Bylaws* [Docket 219-6]:

> "... All rights that would otherwise vest under the Nonprofit Corporation Law in the members shall vest in the Directors..."[6]

---

[5] If necessary, Mr. Goldberg can provide the Court with hundreds of business receipts that he has kept.

[6] Marlin Moore's seat on the board does not mean that he was involved in day to day operations or decision-making. A quorum was all that was needed to make governing decisions.

**B.     Cooperating Co-Defendant Hunter's Comments Should Be Disregarded**

The government points to co-defendant's Hunter's statements following his arrest on outstanding warrants in Los Angeles on the day of the raid as somehow showing that Compass was for profit. Opp'n. Dkt. 228, pg.16:22-28; 17:1-2. Hunter is a cooperating defendant whose self-serving statements when arrested have never been subject to cross-examination and bear no indicia of reliability. Moreover, Hunter has six felony convictions and was on felony probation at the time he was arrested in this case.

### III.

### COMPASS WAS A CLOSED-CIRCUIT OPERATION

The preamble to Compass' Bylaws provided for the "... allocation of surplus production of cannabis lawfully grown by patients and care givers as authorized under Cal. H&S §11362.7 et seq." **See Exhibit 219-6, pg. 21.** The principle of closed-loop membership means that non-profits should not distribute medical marijuana to non-members or to non-qualified patients. There is nothing in Compass' Bylaws which prevented it from entering into the agreement with HCCII (Vermont) pursuant to the advice of their attorney. See Declaration of Scot Candell, **Exh. 219-7, at 50-51.** As an officer of Compass, Mr. Goldberg was authorized to enter into the agreement with HCCII to provide excess medicinal marijuana to qualified patients of HCC. The agreement with HCCII provided as follows:

> "... pursuant to H&S §11362.775, the members of Compass and HCCII are collectively cultivating medical marijuana. Compass, HCCII and their members designate Compass, its agents, contractors and employees all of whom are registered patients and members, to cultivate, assist and supply Compass and HCCII with its medicine." **Exhibit 219-6, at 8.**

As noted in the co-defendant's brief filed May 26, 2017 (Dkt. 217 at 15), there is no California law that prevents the relationship that Compass entered into with HCCII. The relationship between HCCII and Compass is valid as long as all members in a marijuana transaction are qualified patients who are "associating ... in order to collectively or cooperatively cultivate marijuana for medical purposes" and not for profit. This type of relationship was

acknowledged by Judge Seeborg in the *Pisarski* decision, wherein he noted the sale of any of the marijuana yield to other collectives on a not-for-profit basis, for reimbursement only. **See Exhibit W, pg. 8.**[7]

    The AG Guidelines recognize that a collective is not a statutory entity but as a practical matter it might have to organize as some form of business to carry out its activities. Dkt. 219-4 The government is confusing what is a very simple issue. There is nothing that prevented Compass from entering into an agreement with HCC to provide medicine to HCC members. The manner suggested by Compass' attorney was to **ensure** a closed circuit.

    There is no evidence to support any of the government's argument. Govt. Opp'n. Dkt. 228 at 19:9-27. Compass' Bylaws do not preclude it from the manner suggested by its attorney to provide for excess medicine. Moreover, neither the MMP nor the AG guidelines prohibit a qualified patient from being a member of more than one cooperative or collective at the same time. Rather, the procedure that Compass followed with HCC, on the advice of its attorney, ensured a closed circuit operation.

## IV.

## THERE ARE NO INDICIA THAT COMPASS WAS AN UNLAWFUL OPERATION

    The government has erroneously pointed to two factors that it contends suggest an illegal collective; first, excessive amounts of cash and second, possible failure to comply with Cal/OSHA rules.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[7] Counsel for Pisarski argued that "...they can deliver it to a collective that then is closed circuit and distributes it to their other members. They're entitled to get compensation for labor, for soil and for their expenses...they get immunity under 11362.775..."**Exhibit Y**, 32:11-33:1-15.

First with respect to large sums of cash, Judge Seeborg in the *Pisarski* decision explicitly stated:

> "the presence of those assets [$416,125 in cash, and various gold bars, gold coins and silver bars worth $28,515.33 as well as $189,615 welded inside a trailer on the property] is wholly consistent with Pisarski and Moore having been reimbursed for past sales, especially given that marijuana transactions—even those legal under state law—are often made in cash because banks are unwilling to help facilitate the business." **Exhibit W**, 9:9-12.

In *People vs. Jackson, supra,* the defendant was part of a 1,600 member collective. In *People vs. Colvin* (2012) 203 Cal.App.4th 1029 that defendant was the operator of two marijuana dispensaries which together had 5,000 members. The court in *Jackson*, *supra* at 537, citing *Colvin*, said that there is nothing in the MMP which suggests where such a numerical limit should be placed and in any event a numerical limit would be somewhat at odds with one of the express purposes of the MMP, to wit; enhancing access to medical marijuana.

In this case, at the time of the raid Mr. Goldberg was paying bills from approximately $53,557.00 in currency.[8] While the outdated AG Guidelines talk about "signs of mass production," the amounts of currency found at Compass at the time of the raid pales in comparison to the sums in *Pisarski*. Compass did not sell medical marijuana to its members, but rather it was donated. The monies Compass received from HCC were reimbursement for expenses which Mr. Goldberg has previously extensively laid out in his declaration. Dkt. 219-1 at 5-8. The mere presence of cash amidst bills to cover cultivation expenses for an indoor warehouse grow at Compass is not dissimilar to the operation of a rural, cash-intensive enterprise in *Pisarski*.

Second, the speculation the government raises regarding possible non-compliance with CAL/OSHA is similar to the government's argument about sales taxes without any evidence of sales in the *Pisarski* case. See **Exhibit W, at 9:12-23.**

---

[8] The investigation report notes that there were "several envelopes listing expenses that contained a portion of the $53,557. Defendants stated the money in the envelopes was for bills for the collective and was not their money. **See Exh. BB, DEA report, 9/20/12, pg. 11**.

## IV.

## THE *PISARSKI* AND *GENTILE* DECISIONS

Before this Court are two recent decisions applying the *McIntosh* decision to marijuana collectives. The *Pisarski* case, before Judge Seeborg, is instructive as the Court agreed with the defense that the relevant scope of inquiry was "the relevant conditions that applied at the time of defendant's charged conduct in July 2012." **Exh. W, pg. 5:8-11**. In the case before this Court, a total of 1,603 plants were seized on September 19, 2012 [186 from Folsom Street, 856 from Third Street and 561 from Armstrong]. Pisarski was charged with a violation of 21 U.S.C.§§ 841(a)(1), (b)(1)(c) and Mr. Goldberg was charged with 21 U.S.C.§846--- basically a conspiracy to cultivate marijuana. During the evidentiary hearing in *Pisarski*, the defense explained to the Court the unique role of a grower:

> "... the burden where the microscope falls is on who's selling it to the end user, to
> the street person, to the patient, not—the law is very elastic and liberal for the
> grower because there would be no source of supply. So the legislature set up very
> strong protection to growers and they have full immunity as long as they're
> bringing the marijuana to a collective..." **Exh. Y, pg. 38:13-24.**

The Court understood this explanation when it said the following in its decision:

> "... California case law does not offer much further guidance with respect to how
> compliance can be assessed prospectively in such circumstances, except
> establishing that the collective cultivation defense embodied in section
> 11362.775(a) may not be invoked when the proffered members of an alleged
> collective are conclusively *not* qualified patients, persons with valid identification
> cards, or primary care givers..." **Exh. W, pg. 7:20-24** [italics in original]

The Court did not address the issue of sales or the "non-profit" issue since there was no evidence of any sales. Rather, the Court, focusing on the collective cultivation defense, held that the "government had not identified a single member of either collective who was *not* a qualified patient or care giver." **Exh. W, pg. 9:18-27-10;1-3.** [italics in original]

By contrast, the *Gentile* decision out of the EDCA (Fresno) is distinguishable from the facts in the case at bar for the following reasons:

1. The defendant did not present evidence of expenditures exceeding revenues which has been done by Mr. Goldberg.

2. The defendant did not provide evidence of being a patient, caregiver or any verification of qualified status.  Compass required qualified patients and verified the validity of their identification.  **See Exhibit AA.**

3. The defendant failed to comply with Bakersfield local rules.  Compass operated within the recommended structure of local San Francisco medical marijuana laws and relied on compliance attorneys.

4. The defendant did not comply with California Corporate laws. Compass was organized as a collective and was incorporated as a non-profit Mutual Benefit Corporation (previously discussed at pg. 6).

5. The defendant was a store-front dispensary that was incorporated as a **cooperative**.  Compass was a *collective* that did not engage in sales.

## V.

## DEFENDANT'S COMPLIANCE MUST BE WEIGHED BY WHETHER HE SPECIFICALLY INTENDED TO VIOLATE THE LAW

Defendant is charged with a single count of Conspiracy to commit the crime of manufacture and possession with intent to distribute marijuana.  In order to be convicted of a conspiracy, the government must prove that Mr. Goldberg specifically intended to commit the objective of the conspiracy by entering into an agreement with another person to commit the crime.

It is well established California law that ignorance or mistake of law can negate the existence of a specific intent [to conspire to commit a crime].  *People vs. Vineberg* (1981) 125 Cal.App.3d 127, 137.  If there was no specific intent to break the law, then defendant submits that his actions can establish compliance with all relevant marijuana laws by demonstrating that Compass acted in good faith to adhere to the California laws and regulations.

In *United States vs. Kleinman* 858 F.3d 825 (9th Cir. 2017), the Ninth Circuit held as follows:

> "§542 only prohibits the expenditure of DOJ funds in connection with a *specific charge* involving conduct that is fully compliant with state laws regarding medical marijuana. Thus, the applicability of §542 focuses on the conduct forming the basis of a particular charge, which requires a count-by-count analysis to determine which charges, if any, are restricted by §542." (at pg.10) (italics in original).

The case of *People vs. Urziceani* (2005) 132 Cal. App.4th 747, 777 is instructive regarding the prosecution of marijuana charges in a conspiracy. In *Urziceani*, the defendant was the operator of a medical marijuana dispensary. Before opening the dispensary, he spoke with law enforcement officials, members of the district attorneys offices, and attorneys to ensure that his dispensary was compliant with state law. He was ultimately arrested and charged with conspiracy to sell marijuana after opening his dispensary.

On appeal, the court said that the mistake of law defense was available to the defendant, emphasizing that "ignorance or mistake of law can negate the existence of specific intent. *Urziceani, supra* at 777. The defendant's good faith belief that he was not violating the law was relevant in the context of his conspiracy charge. *Urziceani, supra* at 779.

Not only did Mr. Goldberg seek the advice and guidance of several attorneys in organizing Compass and entering into the agreement with HCCII, but he also had been advised by the San Francisco Police Department in September 2011 that his operation was legal and Compass would not be investigated by the narcotics division. See **Exhibit CC**, SFPD Narrative, Case No. 110772379. All of Mr. Goldberg's actions to comply with the law were done within the "gray area" of the non-binding AG Guidelines and the evolving state case law.

While good faith and mistake or ignorance of law is an affirmative defense in a state court criminal prosecution, defendant submits that the measurement of strict compliance by this Court should factor in the steps that Compass took to be compliant. All of its actions taken by Compass and Mr. Goldberg were fully transparent; specifically:

DEFENDANT GOLDBERG'S REPLY TO GOVERNMENT
OPPOSITION TO MOTION TO DISMISS, CR14-00016 MMC                                                   12

- They registered as a non-profit MBA.
- They organized as a group of patients collectively cultivating marijuana.
- They sought to ensure that the membership consisted of only qualified patients.
- They actively engaged with attorneys for the purpose of advice on strict compliance.
- They acted on the advice of multiple attorneys to openly and transparently develop a relationship with HCCII to remain compliant.

## CONCLUSION

The letter in 2011 by then California Attorney General Harris to the California legislature essentially declared the AG Guidelines of 2008 as non-binding for use as a regulatory authority in determining compliance of medical collectives. The impact of the AG Guidelines on medical marijuana compliance was to create a great deal of inconsistency in interpretation and enforcement both by law enforcement and the courts as well as among individuals and entities seeking to participate in the spirit of and within strict compliance of the law.

Though entities like Compass and HCC aimed to implement in practice the proper understanding of the Guideline's intentions, as pointed out in the declaration by Scot Candell, in spite of his belief and advice that a contractual relationship between Compass and HCC was permissible, he recommended that Mr. Goldberg should nevertheless join HCC as a member in order to cover the uncertainty as to what is deemed to be a "closed-loop" relationship.

It cannot be understated that the impact of the Attorney General's determination that the 2008 Guidelines were "non-binding," prior to the September 19, 2012 raids of Compass, is significant and must carry considerable weight when determining "strict compliance".

So what is the Court to use in determining compliance if the rules at the time weren't clear? The lengthy contemplation by the legislature to consider these questions, and the resulting new set of regulations and definitions that resulted in 2015 from the AG's 2011 letter, as well as the letter itself, should be taken heavily into consideration today, because the intentions from that letter and the result of the legislative process has produced new regulatory schemes.

The efforts demonstrated by Compass to establish compliance both within its entity and in the relationship with HCC should not be disregarded due to the Government's interpretation that "strictly compliant" means a selection of alleged deficiencies according to either outdated case law or the "non-binding" AG Guidelines. Accordingly, the defense submits that Mr. Goldberg and Compass have more than met the threshold of strict compliance with all relevant conditions imposed by California law on the use, distribution, possession and cultivation of medical marijuana.

Date: September 26, 2017                                     Respectfully submitted,


                                                             /s/
                                                             RANDY SUE POLLOCK
                                                             Attorney for Defendant
                                                             Mark Goldberg